IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TEVITA TOLUTAU,<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No.  2:12-cr-22 CW<br><br>Judge Clark Waddoups |

Before the court is Defendant's motion to suppress. (Dkt. No. 23.)  Defendant is seeking the suppression of all evidence obtained as the result of an interrogation that occurred on August 11, 2009.  For the reasons stated below, the court denies Defendant's motion to suppress.

## BACKGROUND

On August 11, 2009, Defendant was arrested for his alleged involvement in a robbery of a Wal-Mart, which took place on September 25, 2008.  Following his arrest, Defendant was transported to the F.B.I. Office in Salt Lake City, Utah for questioning.  Prior to his questioning, Defendant was given a document ("Advice of Rights form") advising him of his *Miranda* rights, which he signed indicating that he was informed of his rights and was willing to speak with investigators without a lawyer present.  The Advice of Rights form indicates that Defendant signed the waiver at 1:28 p.m.  Investigators, including Special Agent Eric Lerohl ("Agent Lerohl"), then proceeded to question the Defendant.  The interview lasted approximately one and a half hours, and ended around 3:00 p.m.  Following the interview, Defendant was booked into jail.  He was arraigned the following day.

## ANALYSIS

Defendant challenges the admissibility of the statements he made during the August 11, 2009 interview on three grounds. First, Defendant argues that the statements should be excluded from evidence at trial because the government has not proven that he received a proper *Miranda* warning prior to being questioned. Second, Defendant argues that the statements should be excluded because the government has failed to prove that the statements were made within the six-hour safe harbor period established by statute at 18 U.S.C. § 3501(c). Finally, Defendant argues that the statements should be excluded because the investigators relied on a questioning technique made illegal by the Supreme Court in *Missouri v. Seibert*, 542 U.S. 600 (2004).

**I.      Validity of *Miranda* Waiver**

In order for a *Miranda* waiver to be effective, it must be made "voluntarily, knowingly, and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *See also Smith v. Mullin*, 379 F.3d 919, 932 (10th Cir. 2004). This means that the waiver must be the "product of free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It also means that the waiver must be made "with a full awareness of both the nature of the right[s] being abandoned and the consequences of the decision to abandon it." *Id. See also United States v. Morris*, 287 F.3d 985, 989 (10th Cir. 2002). When a defendant claims that a statement was obtained in violation of *Miranda*, the government has the burden of proving, by a preponderance of the evidence, that a valid waiver was executed. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

Defendant argues that the government has failed to prove that the Advice of Rights form signed by Defendant constitutes a valid *Miranda* waiver. More specifically, Defendant argues that the testimony of Agent Lerohl at an evidentiary hearing regarding the validity of the

*Miranda* waiver was insufficient to prove that Defendant was fully aware of the nature of his rights when he signed the Advice of Rights form. The court disagrees.

At an evidentiary hearing held on March 16, 2012, Agent Lerohl testified that while he didn't recall specifically all the details related to the arrest and interview of Defendant, it was his standard practice to begin an interview by asking the individuals being interviewed "if they can read and understand the English language," and if they answered affirmatively, to provide them with a standard document outlining their *Miranda* rights. Tr. of Hr'g on March 16, 2012, 7 (Dkt. No. 29.) Agent Lerohl further testified that it was his practice to have the individuals "read aloud the first portion of the document which outlines their rights under *Miranda*" and then to ask if they have any questions. *Id*. Once the individuals indicate that they understand their rights and have no questions, Agent Lerohl testified that he would ask if "they wish to waive their right to *Miranda*" and to sign the document if there was assent. *Id*. The document is then signed by the two agents conducting the interview as witnesses. *Id*. Agent Lerohl testified that he followed these standard practices during the initial stages of the interview of Defendant on August 11, 2009. *Id*. at 12-13. In addition to Agent Lerohl's testimony regarding the *Miranda* waiver at issue in this matter, the government submitted the Advice of Rights form signed by Defendant. *See* Advice of Rights, Gov't Ex. 1, Hr'g on March 16, 2007 (Dkt. No. 26.)

Defendant admits signing the Advice of Rights form, but argues that Agent Lerohl's testimony regarding the presentation of the document and the signature cannot be relied on because it revealed that Agent Lerohl had a poor recollection of the events at issue. Specifically, Defendant relies on Agent Lerohl's testimony that he did not remember the clothing the other interviewing agent was wearing, whether or not the other interviewing agent had his gun covered or not, or how many officers were in his vehicle when traveling to arrest Defendant. Defendant

argues that Agent Lerohl's memory of the interview was so bad that he had to rely on jail booking records obtained on the day of the hearing to refresh his memory. Defendant also argues that Agent Lerohl's testimony regarding his "standard practices" is an indication that he did not actually know what happened prior to the interview of Defendant.

Furthermore, Defendant claims that his own testimony is more reliable and effectively rebuts the testimony of Agent Lerohl. Defendant testified that upon receiving the Advice of Rights document, he was asked to "read the paper silently and . . . was told to sign it." Tr. of Hr'g on March 16, 2012, 38 (Dkt. No. 29.) He then testified that because he was nervous, he looked at the whole paper but only read the portion that said: "You have the right to remain silent. Anything you say can be used against you." *Id*. Defendant also indicated that he knew he had the right to remain silent. *Id.* at 38-39.

While it is true that testimony regarding an individual's standard practices is not as probative as testimony of specific details that occurred during a certain event, testimony about practices is not without value. It is also not proof that a witness does not have any recollection of an event he is testifying about. When Defendant's counsel suggested that Agent Lerohl did not have a specific recollection of the interview in question, Agent Lerohl testified, "That is not correct." Tr. of Hr'g on March 16, 2012, 23 (Dkt. No. 29.) The fact that Agent Lerohl could not remember every detail of the events surrounding the arrest and questioning of Defendant is not evidence that Agent Lerohl's testimony was untruthful or unreliable. Agent Lerohl was candid with the court about the details he could not remember.

Furthermore, portions of Defendant's testimony appear less than reliable. Defendant initially testified that he was in the F.B.I.'s interview room for 10 to 15 minutes prior to being presented with the Advice of Rights form. Tr. of Hr'g on March 16, 2012, 35 (Dkt. No. 29.) He

later changed his testimony, indicating that he was given the form after having fallen asleep for an unknown period of time and later gave testimony that he was in the interview room for "three or four hours" before the agents started the interview. *Id*. at 35-36, 53.  Defendant also initially testified that he read the entire Advice of Rights form prior to signing it, only later claiming that he only read a portion of it. *Id*. at 38.  Finally, Defendant testified that it was "a week and a day" after his arrest before he was taken before a judge for an arraignment. *Id*. at 50-51.  The record in this case, however, indicates that an arraignment was held one day after his arrest.

After considering the totality of the circumstances, the court finds that the government has met its burden of showing that Defendant executed a valid *Miranda* waiver prior to being interviewed.  The Supreme Court has stated that "[t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Colorado*, 479 U.S. at 170.  No credible evidence has been submitted to the court to suggest that Defendant was coerced into signing the Advice of Rights form against his will or without an understanding of the nature of the rights being abandoned.  Agent Lerohl testified that Defendant read the Advice of Rights form aloud and was given the opportunity to ask questions about his *Miranda* rights before signing the waiver.  Tr. of Hr'g on March 16, 2012, 12-13 (Dkt. No. 29.)  While Defendant's testimony contradicts this version of events, he admits in his testimony before the court that he was given the opportunity to read and consider his rights prior to signing the waiver. *Id.* at 38.

Even if Defendant is correct that he was only asked to read the Advice of Rights form silently to himself, there is no evidence of trickery or compulsion on the part of Agent Lerohl or his partner.  Agent Lerohl testified that he asked Defendant if he could read and understand the English language. *Id*. at 12.  Defendant testified that he was a high school graduate and that he read at least a portion of the rights form. *Id*. at 32, 38.  While oral delivery of *Miranda* warnings

5

may be a more effective way to ensure that an individual is informed of all of their rights, the court has found no precedent to support the argument that giving *Miranda* warnings in a written form is insufficient. Defendant was given the opportunity to read and understand his *Miranda* rights. The fact that he may not have taken that opportunity will not defeat a documented *Miranda* waiver with a witnessed signature.

**II.     18 U.S.C. § 3501(c) Safe Harbor**

18 U.S.C. § 3501(c) prohibits courts from holding confessions made by defendants in custody inadmissible solely because of delay in bringing the defendant before a magistrate if the confession is made voluntarily, if the weight to be given the confession is left to the jury, and if the confession is made within six hours immediately following the defendant's arrest or other detention. (2012) The Supreme Court affirmed the validity of this statute in *Corley v. United States*, 556 U.S. 303 (2009).

Defendant argues that his confession was made after the six-hour safe harbor established by Section 3501(c) had expired. The government disputes this.

According to the testimony of Agent Lerohl, Defendant was arrested at 1:00 p.m. on August 11, 2009. Tr. of Hr'g on March 16, 2012, 10 (Dkt. No. 29.) Defendant testified, to the contrary, that he was arrested "early in the morning," about an hour after he dropped his siblings off at school. *Id.* at 33, 51-52. The Advice of Rights form indicates that Defendant signed the waiver at 1:28 p.m. Advice of Rights, Gov't Ex. 1, Hr'g on March 16, 2007 (Dkt. No. 26.) Agent Lerohl testified that the interview lasted approximately one and a half hours. Tr. of Hr'g on March 16, 2012, 19 (Dkt. No. 29.) Defendant has not offered evidence to dispute the length of the interview.

If Agent Lerohl's testimony is correct, Defendant's confession clearly falls within the six-hour safe harbor established by 18 U.S.C. § 3501(c). Having been arrested around 1:00 p.m., the safe harbor would have extended to 7:00 p.m. The interview, which ended at approximately 3:00 p.m., would be well within this period. The court finds Agent Lerohl's testimony credible.

Even if the court credits Defendant's version of events, however, the confession was still likely to have been obtained within the six-hour safe harbor. Defendant's counsel asserts that it is reasonable to assume that Defendant dropped his siblings off at school at 7:00 a.m. The government, on the other hand, claims that no elementary school in the Salt Lake City School District begins before 8:00 a.m. No evidence has been provided as to what time Defendant actually dropped his siblings off at school, but even if it is assumed that they were dropped off at 7:00 a.m., Defendant, by his own testimony, would not have been arrested until around 8:00 a.m. Under these facts, the six-hour safe harbor would have ended around 2:00 p.m., after Defendant had signed the Advice of Rights form and began talking to police.

Furthermore, even if Defendant's confession occurred after the six-hour safe harbor period had expired, Defendant would still have the burden of proving that there was an unreasonable delay in his presentation before a judge for an arraignment. *See Corley*, 556 U.S at 322 ("If the confession occurred before presentment and beyond six hours . . . the court must decide whether delaying that long was unreasonable or unnecessary . . . and if it was, the confession is to be suppressed."). Beyond the errant testimony of Defendant that he was not presented for an arraignment until eight days after his arrest, Defendant has presented no evidence that indicates that there was such an unreasonable delay. The court, therefore, declines to suppress Defendant's confession made shortly after his arrest on August 11, 2009.

### III.     *Missouri v. Seibert*'s Interrogate First Prohibition

In *Missouri v. Seibert*, 542 U.S. 600 (2004), the Supreme Court held unconstitutional the investigative tactic of eliciting inadmissible confessions from arrested individuals prior to informing them of their rights, and then asking them to repeat the confession a second time after *Miranda* warnings had been extended. The Court reasoned that this two-stage interrogation tactic was intended to undermine the *Miranda* warnings by coercing individuals to give confessions against their will. *Seibert*, 542 U.S. at 613. To enforce its ruling, the Court held that post-*Miranda* warnings obtained using this interrogate-first technique could be held inadmissible under the exclusionary rule. *Id*. at 617.

The Court also made clear in *Seibert*, however, that the mere fact that a confession was solicited and obtained while an individual was in custody, but before he or she was properly given *Miranda* warnings, does not make any subsequent confession inadmissible. *Id*. at 615. On this point, there was a disagreement among the majority as to what post-*Miranda* confessions would be excludable. Justices Souter, Stevens, Ginsburg, and Breyer adopted a series of factors to consider when determining whether "*Miranda* warnings delivered midstream" would be effective. These factors included:

> [1] the completeness and detail of the questions and answers in the first round of interrogation, [2] the overlapping content of the two statements, [3] the timing and setting of the first and the second, [4] the continuity of police personnel, and [5] the degree to which the interrogator's questions treated the second round as continuous with the first.

*Id*. at 615. Furthermore, they held that "a good-faith *Miranda* mistake" that bore "none of the earmarks of coercion" would not cause a post-*Miranda* confession to be excluded from evidence at trial under this rule. *Id*. at 614-15 (citing *Oregon v. Elstad*, 470 U.S. 298 (1985)). Justice Kennedy, in a concurring opinion, argued that the objective inquiry into the effectiveness of a

8

*Miranda* warning advocated by the plurality was too broad. *Id*. at 622 (Kennedy, J., concurring). Instead, he argued, only post-*Miranda* confessions that were obtained via the deliberate two-step strategy rejected by the Court in *Seibert* should be suppressed, unless curative actions had been taken after the initial interrogation. *Id*.

Because Justice Kennedy's more narrow concurring opinion was necessary for the judgment, it is the controlling precedent with respect to the treatment of post-*Miranda* confessions preceded by pre-*Miranda* interrogation and confession. *See United States v. Sanchez-Gallegos*, No. 09-2146, 412 Fed. Appx. 58, 72-73, 2011 U.S. App. LEXIS 164 (10th Cir. Jan. 4, 2011) (Ebel, J., Concurring) (unpublished). Therefore, *Seibert* only directs courts to hold such confessions inadmissible if they were obtained as a result of a deliberate strategy to elicit an inadmissible confession for the purpose of coercing a second confession after the extension of *Miranda* warnings.

This is not the circumstance the court faces in this case. At the evidentiary hearing held on March 16, 2012, Defendant testified that after he was arrested, but prior to receiving any *Miranda* warnings, he was asked by a law enforcement agent if he knew why he was there. Tr. of Hr'g on March 16, 2012, 37 (Dkt. No. 29.) Defendant testified further that in response to this inquiry, he indicated that he believed he was there because of "the Walmart [sic] robbery." *Id*. In contrast, Agent Lerohl testified that prior to giving Defendant the Advice of Rights form, the Defendant was informed of the charges against him. *Id*. at 30-31. When Agent Lerohl was questioned about whether he asked Defendant if he knew why he had been arrested, Agent Lerohl testified that he "didn't ask that question." *Id*.

It is Defendant's contention that by asking Defendant if he knew why he was arrested and soliciting a response that he was there because of "the Walmart robbery," the officers

questioning Defendant engaged in the two-step interrogate-first tactic prohibited by *Seibert*. As a result, Defendant is requesting that his post-*Miranda* confession be excluded from evidence at trial.

Even assuming, for the sake of argument, that Defendant's account of the pre-*Miranda* questioning that took place is credible, Defendant has not offered any evidence that the pre-*Miranda* questioning at issue was engaged in with the deliberate intent of eliciting a valid post-*Miranda* confession. *Seibert* requires a showing that law enforcement deliberately engaged in an effort to pressure Defendant into making a pre-*Miranda* confession in order to procure a second post-*Miranda* confession. Based on the evidence in the record, the court cannot make such a finding.

The facts before the court do not support suppression of Defendant's post-*Miranda* confession under the plurality rule in *Seibert* either. If Defendant's allegation is true, the pre-*Miranda* questioning of Defendant was cursory and not clearly intended to solicit a confession. Defendant's response that he was there because of "the Walmart robbery" is significantly different than his later confession that he was involved in the robbery at issue. The pre-*Miranda* questioning was interrupted by Defendant receiving a written statement of his rights which he had the opportunity to read and then waive in writing. There is no evidence that the rights were given hastily in an attempt to trick Defendant into giving an involuntary waiver. There is also no evidence that the interviewing agents referred back to Defendant's pre-*Miranda* statement when questioning him after he received the Advice of Rights form. In short, none of the "earmarks of coercion" referenced by the Court in *Seibert* have been shown to be present in this case.

The court holds that Defendant has not met his burden of showing that law enforcement deliberately engaged in the interrogate-first technique proscribed in *Seibert* and is, therefore, not entitled to have his post-*Miranda* confession excluded from evidence at trial.

## **CONCLUSION**

For the reasons state above, the court hereby DENIES Defendant's motion to suppress in its entirety.

DATED this 22nd day of May, 2012.

BY THE COURT:

_____
Clark Waddoups
United States District Judge